UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BERTALINA HERNANDEZ                                       CIVIL ACTION

VERSUS                                                    NO. 08-3420

MICHAEL J. ASTRUE,                                        SECTION "R" (3)
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

### REPORT AND RECOMMENDATION

Plaintiff, Bertalina Hernandez (Hernandez), filed this action seeking judicial review of a decision of the Defendant denying her applications for Title II disability and Title XVI supplemental security income.[1] Having reviewed the submissions of the parties and the administrative record filed in the captioned matter, the undersigned files this Report, recommending that the Commissioner's Cross-Motion for Summary Judgment be denied and that the Plaintiff's Motion for Summary Judgment be granted insofar as it seeks reversal of the Commissioner's decision and remand of plaintiff's case to the ALJ for further proceedings.

### I. Statement of the Case

Hernandez applied for disability benefits and SSI on July 11, 2006, claiming that severe back problems and asthma limited her ability to work and that she had been disabled since August, 2005. (Admin. Rec. (AR) 71-75)) On July 5, 2007, the Administrative Law Judge (ALJ) conducted a hearing at which Hernandez was represented by counsel and testified. (AR 20-36) She testified that she was 42 years old, finished the tenth grade and did not get a GED or go to trade or vocational school. Hernandez further testified that her prior work was as a service

---

[1]*See* Decision of Administrative Law Judge Gerardo Mariani dated October 11, 2007 [Admin. Rec. (AR) 12-19].

writer – *i.e.*, answering the telephone and writing estimates for automobile repairs. (AR 23-24) She testified that, in 2004, the pain in her lumbar spine and breathing problems became worse and she began missing three to four days a month due to doctor's visits to address her physical problems. Hernandez testified that she did not go back to work after Hurricane Katrina. (AR 24-25)

Plaintiff's counsel informed the ALJ at the outset of the hearing that Hernandez was meeting with her treating orthopedist Dr. Eiserloh on August 8th, 2007 to pick a date for lumbar surgery. (AR 23, 35) Regarding her back condition, Hernandez testified that she experiences numbness in both legs so severe that she must sit until the feeling "comes back." (AR 26) Because the injections did not work, she intended to proceed with the surgery. Plaintiff indicated that she had difficulty sleeping at night due to severe asthma. She testified that she sleeps sitting up because she has stopped breathing a few times, which frightened her. (AR 26).

For her asthmatic condition, plaintiff's prescription drug therapy includes Advair and Albuterol administered via nebulizer breathing treatments. For the pain related to her lumbar spine condition, plaintiff takes Hydrocodone and Ibuprofen. She also takes high blood pressure medication and Lexapro for depression. (AR 27).

Hernandez indicated that her activities were limited by her pain. Most of the time she rests, but she can perform a little cooking and cleaning if she takes breaks. Plaintiff testified that her little girl helps her with the cleaning. She testified that she used to get a lot of exercise (walking); however, Hernandez explained that she cannot do that anymore because after about 15 to 20 minutes her legs become numb, particularly on her left side. She indicated that she has difficulty bending and lifting and her asthmatic condition precludes climbing stairs. (AR 28)

2

Plaintiff reported that her medications do not ease her pain and she cries a lot. Hernandez testified that when she did work (prior to August, 2005) and her condition worsened, her boss initially allowed her to go into his office to take little breaks but that, after a period of time, he began to get "very aggravated." (AR 31)

In evaluating disability, the Commissioner conducts a five-step sequential analysis under which it is determined whether: (1) the claimant is not working in substantial gainful activity; (2) the claimant has a severe impairment or combination of severe impairments; (3) the claimant's impairment(s) meets or equals in severity a listed impairment in Appendix I of the regulations; (4) the impairment(s) prevent the claimant from performing his past work; and (5) the impairment(s) prevent the claimant from performing alternative work. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir.2000); 20 C.F.R. § 416.920 (2008). In order to determine whether the claimant is disabled, the Commissioner considers the claimant's medical records, as well as the claimant's subjective allegations and the claimant's credibility. 20 C.F.R. § 416.929.

In this case, the ALJ determined that (1) Hernandez was not working during the time she claimed disability, (2) she suffered from "severe" impairments (asthma and osteoarthritis), but that (3) her impairments did not meet or equal in severity any of the listings in the regulations. (AR 14) The ALJ analyzed Hernandez's testimony, but superficially and/or selectively reviewed the medical evidence. He also discussed the plaintiff's relevant work history. The ALJ determined that Hernandez's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. (AR 16). The ALJ further found that "there is no evidence to support the subjective complaints regarding limitations in standing,

3

walking and sitting" and there was no showing as to any complaints to treating or examining physicians regarding side effects from medications. (AR 16).

With respect to plaintiff's treating physician Dr. Eiserloh's August 8, 2007 medical opinion regarding his L4, L5 and S1 diagnosis and scheduled surgery, the ALJ gave it little or no weight, stating:

> On August 8, 2007, Dr. Eiserloh opined that the claimant has *L4-5 and L5-S1 stenosis*, that she has limitations of activities of daily living, and that *she is to have surgery*. (Exhibit 13F). This opinion gives nothing with regard to specific limitations and I find that it is commensurate with the aforementioned residual functional capacity."[2]

Addressing consultative examining physician Miljana Mandich's opinion, the ALJ noted that:

> "[The] opinion regarding the 'tingling and numbness' in lower extremities and problems walking relieved by rest (Exhibit 4F) is not supported by anything other than claimant's subjective complaints credible only to the extent described in the aforementioned residual functional capacity."[3]

The ALJ gave *moderate* weight to the opinion of state agency medical consultant, Dr. Louis Balart, who completed the physical residual functional capacity assessment and similarly reported Hernandez's complaints of some "tingling" and opined that she was capable of performing work at the *medium* exertional level.[4] (AR 16, 18, 40/Exhibit 5F) The ALJ then

---

[2]ALJ's Determination (AR 18) (italicized emphasis added).

[3]*Id. See also* Report of Internist Dr. Miljana Mandich dated September 10, 2006 (diagnosing "chronic low back pain since motor vehicle accident in 1992, abnormal MRI in November of 2004 that showed multi-level degenerative disc disease along with moderate to severe spinal canal stenosis between L4 and S1, tingling and numbness in both lower extremities with the left being worse than the right [which] occurs with walking and is relieved by patient resting") (AR 169-174).

[4]*See* Dr. Louis Balart's Physical RFC Assessment dated September 26, 2006 (specifically noting that at the time of his review there was no statement of any treating or examining

4

determined that plaintiff was capable of performing "light work" with certain postural restrictions, *inter alia*, including her past relevant work as a service writer and concluded that Hernandez was not disabled within the meaning of the Social Security Act. (AR 18)

## II. Parties Contentions

Hernandez contests the determination the ALJ made at step three of the sequential analysis. She claims that there is substantial evidence of record tending to show that her impairments meet or at least equal the criteria and severity requisites of Listing 1.04, the listing for disorders of the spine. Plaintiff emphasizes that the ALJ did not even mention Listing 1.04 in his decision and that he did not provide any discussion regarding whether her impairments met that particular listing. Citing *Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007), Hernandez contends that the ALJ's step-three determination is "beyond meaningful judicial review."[5] She specifically highlights medical evidence in her case, documenting findings nearly identical to those in *Audler* and identifies the diagnostic findings of nerve root compression, linking diagnostic findings with each of the required elements of § 1.04A.[6]

For his part, the Commissioner admits that the ALJ failed to articulate a basis for his denial at Step 3 and to mention the listing at § 1.04.[7] Defendant further argues that "[h]ere,

---

physician regarding Hernandez's physical capacities in her file) (AR 177-184).

[5]*See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (holding that "such a bare conclusion is beyond any meaningful review").

[6]*See* Plaintiff's Motion for Summary Judgment, Memorandum in Support and Statement of Uncontested Material Facts and Attachment Appendix A (Earl K. Long/LSU Medical Center's Records) [Fed. Rec. Doc. 15].

[7]*See* Defendant's Cross Motion and Memorandum in Support at p. 7 (recognizing that the ALJ did not identify what listings he had considered and did not explain how plaintiff's back impairment did not meet or equal listing 1.04) [Fed. Rec. Doc. 18].

unlike *Audler,* Plaintiff has not presented <u>uncontradicted</u> medical evidence that Plaintiff meets or equals the severity requirements of listing 1.04 " and thus plaintiff has only succeeded in demonstrating "harmless error with no impact on this case."[8] Finally, the Commissioner opposes "consideration of three new medical records attached to plaintiff's brief" arguing that the materials are "outside of the record," and "plaintiff has failed to establish why such evidence should be considered by the Court."[9] The Commissioner's position is that these records were not included in the certified transcript, do not appear to have been considered by the ALJ, do not change the propriety of the step 3 finding and thus do not meet the materiality requirement.[10]

In reply, plaintiff notes that the Commissioner candidly admits that (1) the ALJ failed to articulate a basis for his denial at Step 3 or even mention the relevant listing at § 1.04; and (2) in *Audler,* the Fifth Circuit held that plaintiff met her burden by elucidating evidence tending show that she could have met a listing. Hernandez points out that, "in actuality, [the ALJ] grossly mischaracterized the diagnostic evidence and neglected mention of the most significant diagnostic criteria and clinical medical findings, to wit:

> "The ALJ, at Step 2, found that the claimant's impairment was 'ostearthritis.' (Tr. 14). The ALJ refers to the December 2006, MRI generally but ignores its most relevant finding as it relates to the listing (*see* Tr. 15). The Plaintiff has MRI and x-ray evidence of disc herniations at L4-5 and L5-S1 with contact and distortion of the nerve roots at L4 and L5 (*see* Tr. 157, 186). X-rays revealed diffuse degeneration with 'special compromise of L4, L5 and S1 (Tr. 157). The ALJ's finding of 'ostearthritis' therefore is a mischaracterization and a gross under-estimation of the claimant's true pathology. Moreover, the fact that the ALJ never even once refers to the diagnostic evidence of nerve root compression in at least two disc levels contradicts the U. S. Attorney's assertion that the ALJ

---

[8]*See id.*, at p. 8.

[9]*See id.,* at p. 13.

[10]*See id.,* at pp. 14-15

6

> 'considered' the diagnostic evidence before his Step 3 finding. In truth, the ALJ ignored the x-ray evidence of 'special compromise' of L4, L5 and S1 and he only tacitly mentions the MRI findings, leaving out the most significant finding, that being L4 and L5 nerve root compression (*see* Tr. 15).

The plaintiff further highlights that the standard does not require a showing that she "*clearly* meets or equals" the listing requirements or that she show same by "*uncontradicted*" evidence; instead, the applicable standard is "substantial evidence." Moreover, the Fifth Circuit in *Audler* did not require a more stringent standard. Like the ALJ in *Audler,* plaintiff submits that the ALJ in the case at bar "offered nothing to support" his conclusory statement that Hernandez's impairments do not meet or equal the subject listing. Finally, plaintiff points out that the "new" medical evidence submitted with her brief is not only material but *was, in fact, considered*. Indeed, the ALJ refers to medical treatment records from LSU Medical Center (EKL); however, the certified transcript includes no such treatment records from Earl K. Long.

### III. Discussion

This Court must affirm the Commissioner's decision if it is supported by substantial evidence, unless improper legal standards were applied. 42 U.S.C. § 402(g). On questions of fact, this Court may not re-weigh the evidence, substitute its judgment for that of the defendant, or reverse his decision if a reasonable mind might find that the relevant evidence he relied on supports his decision. *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000). On questions of law, this court may reverse to correct prejudicial legal error. *Id.*

If it is determined at step three of the sequential disability evaluation that the claimant's impairments meet or medically equal the criteria of a listed impairment, disability is presumed and the evaluation ends in the claimant's favor. 20 C.F.R. § 416.920(a); *see Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir.2000) (disability is conclusively presumed if a claimant's impairments

7

meet or equal the criteria of one of the listed impairments in the Commissioner's regulations).

At step three of the sequential evaluation in this case, the ALJ stated: "There is no showing that the severity of the claimant's impairments, singly or in combination, rises to the level of severity described in any listed impairment." (AR 15) The ALJ did not specifically analyze whether Hernandez's impairments met the criteria of Listing 1.04, the listing for spinal disorders or any other listing.

In *Audler*, the Fifth Circuit Court of Appeals held that a step-three analysis similar to that provided by the ALJ in this case was inadequate. In that case, the claimant contended that her impairments met the criteria of Listing 1.04, the listing for spinal disorders. *Audler*, 501 F.3d at 448. Despite evidence in the record of related problems in Audler's cervical and lumbar spine, the ALJ did not cite Listing 1.04. He instead concluded in summary fashion, as did the ALJ in this case, that the impairments did not meet the criteria of any listed impairment in the regulations. *See id.,* at 448. The court found the ALJ's analysis insufficient noting that the ALJ failed to identify the particular listed impairment for which Audler's impairments failed to qualify and that the ALJ failed to provide an explanation as to why Audler's impairments did not meet any listed impairment. *Id.* The court admonished that "'[s]uch a bare conclusion is beyond meaningful judicial review'" and directed that the ALJ was required to discuss the evidence in the record and explain why the claimant was not disabled at step three of the sequential evaluation. *Id.* (*quoting Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.1996)). The court explained that because the ALJ had offered nothing to support the step three decision, "'we, as a reviewing court, simply cannot tell whether her decision is based on substantial evidence or not.'" *Audler*, 501 F.3d. at 448 (*quoting Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir.1986)).

The court indicated that such a failing would require remand if the ALJ's error harmed the substantial rights of the claimant. *See Audler*, 501 F.3d at 448 (*citing Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir.1988)). The court determined that Audler had demonstrated that her impairments met the requirements of Listing 1.04A and that her substantial rights had therefore been affected by the ALJ's failure to explain the basis of the step-three determination. *Audler*, 501 F.3d at 449.

As in *Audler*, the ALJ here lingered only briefly at Step 3, dispensing with the issue by a single sentence and providing no analysis, whatsoever, to support that determination. Despite medical evidence documenting "severe" lumbar spine impairments in addition to "osteoarthritis" at L4, L5 and S1, the ALJ did not evaluate or discuss whether the plaintiff was disabled under Listing 1.04. (*See* AR 14-18.) Based on the evidence in this case, Hernandez was prejudiced by the ALJ's failure. Medical evidence of record reveals the following findings, to wit: (1) dessication at level T12-L1; (2) L2-3 level shows disk dessication narrowing with minimal spondylosis; (3) L3-4 level shows minimal subforaminal bulging on the right; (4) L4-5 level demonstrates dessication and a broad-based slightly asymmetric protrusion with slight posterior element hypertrophy resulting in moderate central stenosis, vacuum phenomenon, and foraminal compromise with contact and distortion of the left foraminal nerve root; (5) L5-S1 level demonstrates a broad-based central disk protrusion with deformity of the thecal sac and bilateral foraminal compromise.[11]

---

[11]*See* LSU Medical Center Earl K. Long Radiology Report dated December 21, 2006 (noting impressions including "dessication and central disk protrusions at L4-L5 and L5-S1, "mild foraminal compromise secondary to a combination of subforaminal spondylosis, bulging, and facet hypertrophy" as well as mild anterior inferior endplate degenerative changes at L4) (AR 188-189). *See also* LSU Medical Center Earl K. Long Clinic Treatment Records dated

Listing 1.04 requires evidence of herniated nucleus pulposus, spinal archnoiditis, *spinal stenosis*, *osteoarthritis*, *degenerative disc disease*, facet arthritis, or vertebral fracture that results in *compromise of the nerve root* or the spinal cord. 20 C.F.R. pt. 404. subpt. P, app. 1, § 1.04. A thorough review of the record reveals that medical evidence of several of the foregoing impairments was submitted and apparently reviewed *but only superficially* and not mentioned. The evidence at issue not included in the administrative record (the three pages of Earl K. Long medical records/Plaintiff's Appendix A) tends to corroborate the neurological findings of Dr. Eiserloh and reveals additional medical evidence of more than just the medically determined "severe" impairment of "osteoarthritis." (See AR 196, 198, 199 and Appendix A 221-223) The medical evidence establishes dysfunction, neurological findings (sensory loss, muscle/motor loss, weakness, radicular pain, positive straight leg raises) and limitation of motion in Hernandez's lumbar spine. ( *See* AR. 196, 198, 199 and *Compare* Appendix A 221-223).[12] There is diagnostic evidence of nerve root compression (not mentioned at all in the ALJ's discussion of the medical evidence), which could easily account for the plaintiff's radiating pain symptomotology, tingling and numbness in both extremities (more on the left) and her alleged inability to sustain or complete daily activities.

---

November, 2006, January 2007 and November, 2007 (noting positive straight leg raises at 50 degrees wit neuroanatomic distribution of back pain radiating down past thigh and knee into the calf, sensory loss in the left L4 distribution (App A 223), pain on hip flexion especially in gluteal region, muscle/motor strength loss (4/5) in the tibialis anterior and extensor hallucis longus muscles on the left (App A 221/see also Eiserloh AR 199), motor strength loss/weakness in L5 distribution, sensory loss in the left inner thigh and strength loss on dorsiflexion and heel walking, left trochantic bursitis and HNP L4-5 and L5-S1 (App A 221/*see also* Eiserloh (AR 112, 115)).

[12]*See* Plaintiff's Statement of Undisputed Facts [Fed. Rec. Doc. 15-3].

The regulations define the "inability to ambulate effectively" broadly, to wit: (1) 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(2)(b)(1) provides that an extreme limitation of the ability to walk may mean an impairment that interferes very seriously with the individual's ability to independently initiate, *sustain*, or *complete daily activities*; and (2) § 1.00(2)(b)(1) further gives examples "ineffective ambulation," which includes the inability to walk without the use of a walker, two crutches or two canes, and *the inability to walk a block at a reasonable pace on rough or uneven surfaces*.[13] *Id.* (italicized emphasis added).

The regulations direct that the determination as to whether a claimant can ambulate effectively is "based on the medical and other evidence in the case record." 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(2)(a). (Tr. 543-46.) Medical evidence including treating physician Dr. Eiserloh's recommended surgical intervention was dismissed with little, if any, discussion; then, Hernandez's testimony regarding radiating pain and numbness in her legs was summarily rejected notwithstanding the ALJ's recognition of the fact that "claimant's medically determined impairments could reasonably be expected to produce the alleged symptoms." Plaintiff testified at length regarding her inability to sustain or complete daily activities, which commenced sometime in 2004 before the alleged date of onset of disability (August 2, 2005).

Hernandez's substantial rights were affected by the ALJ's failure to discuss why her medically determined lumbar spine problems did not meet *or equal* the criteria set forth in listing §1.04 of the regulations. It is not for this Court to determine, in the first instance, whether the "substantial evidence" standard is met considering the medical facts presented in this case.

---

[13]Plaintiff testified that standing 15 to 20 minutes causes pain and numbness and that walking about a half of a block causes numbness, particularly on her left side. (AR 28).

11

Because remand is required for a more thorough step-three analysis, the Commissioner should discuss all of the medical evidence of impairment including the material, relevant and corroborative treatment records which were made available to the ALJ and/or the reviewing court but unwittingly omitted from the administrative record. The Court remains mindful that the Commissioner has the exclusive prerogative to weigh evidence and resolve conflicts, and further acknowledges that judicial review is both highly deferential to the Commissioner and limited in scope. The Court does not purport to direct a particular ultimate outcome upon remand. Therefore, upon remand, the Commissioner will be free to re-examine all issues in light of the applicable standards discussed hereinabove.

In sum, the conclusory finding is materially indistinguishable from that condemned in *Audler*. No reference whatsoever was made to the relevant listing under consideration ( Listing §1.04 re Spinal Disorders). The ALJ does mention "clinical and laboratory diagnostic techniques," (AR 15) and state that the "medical evidence is equivocal at best" including the absence of evidence to support the limitations claimed by plaintiff (AR 16). However, these statements are little more than boilerplate given the failure to cite to record evidence or to specify the listing criteria to which any clinical signs and laboratory findings might relate. While "an exhaustive point-by-point discussion" is not always required, it is error for the ALJ to offer nothing in support of an adverse finding at Step 3. *Audler*, 501 F.3d at 448. For all of the above and foregoing reasons, Hernandez's claim of legal error is therefore sustained.

## IV. Recommendation

The reviewing court must determine whether the Commissioner's decision is supported by substantial evidence *and whether proper legal standards were used to evaluate the evidence*.

*Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir.2002) (*citing Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999)). The improprieties identified by the plaintiff are sufficient to cast doubt on the existence of substantial evidence to support Commissioner's final decision in this case. Based on the discussion of the issues in this Report and Recommendation, the evidence, and the law, the undersigned RECOMMENDS that the Commissioner's decision be reversed and this case be remanded case for further administrative proceedings.

### V. Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996) (en banc).

New Orleans, Louisiana, this 24th day of August, 2009.

                              DANIEL E. KNOWLES, III
                              UNITED STATES MAGISTRATE JUDGE